### UNITED STATES DISTRICT COURT
### WESTERN DISTRICT OF KENTUCKY
### LOUISVILLE DIVISION

IN RE: SKECHERS TONING SHOE        **Master File No. 3:11-MD-2308-TBR**
PRODUCTS LIABILITY LITIGATION       **MDL No. 2308**

THIS DOCUMENT RELATES TO ALL       **THOMAS B. RUSSELL**
CASES                                      **U.S. DISTRICT JUDGE**

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on the Settling Parties' motion for preliminary approval of the class-action settlement. Settling Parties' Mot. Prelim. Approval, Docket Number ("DN") 83. Plaintiff Sonia Stalker objected to the proposed settlement. Stalker Objection, DN 95. The Settling Parties replied to Plaintiff Stalker's objections. Settling Parties' Reply, DN 104. On July 24, 2012, the Court held a preliminary fairness hearing in which the Settling Parties and Plaintiff Stalker presented oral arguments on the merits of the proposed settlement and the objections thereto. The Court heard additional arguments on the remaining issues at a telephonic conference of the parties on August 3, 2012. By order of August 8, 2012, the Court suggested changes to the settlement agreement that, if substantially adopted, would allow the Court to preliminarily approve the settlement. Order of Aug. 8, 2012, DN 145. Subsequent to that order, the Settling Parties filed an amended Settlement Agreement substantially incorporating the Court's suggested changes. Second Am. Settlement Agreement, DN 147. Given the extensive nature of the foregoing proceedings, this matter is now ripe for adjudication. The Court, having reviewed the record and being fully advised, certifies this matter as a class action for the purposes of settlement and preliminarily approves the settlement agreement.

### BACKGROUND

On May 16, 2012, Plaintiff Tamara Grabowski and Defendant Skechers U.S.A., Inc.,

("Grabowski" and "Skechers," individually, or the "Settling Parties," collectively) moved the Court for preliminary approval of a class-action settlement.  By way of the agreement the Settling Parties sought to resolve the economic injury, consumer fraud, and unfair practice claims alleged by Grabowski on behalf of a nationwide class of consumers.  Specifically, Grabowski alleged that Skechers violated California's Consumer Legal Remedies Act ("CLRA"), Civ. Code § 1770, *et seq.* and the Unfair Competition Law ("UCL"), Bus. & Prof. Code § 17200, *et seq.*, and that Skechers breached the express warranty conveyed to a nationwide class of consumers who purchased a number of Skechers's products collectively referred to herein as "Skechers Toning Shoes."  The proposed settlement is the product of extensive investigation and negotiations between the Settling Parties.

On the same day that the Settling Parties filed their original motion for preliminary approval with this Court, Grabowski and the Federal Trade Commission ("FTC") entered into a Stipulated Final Judgment and Order for Permanent Injunction and Other Equitable Relief ("Stipulated Order") with Skechers concerning its Skechers Toning Shoes.  Pursuant to the Stipulated Order, the FTC filed a complaint for Permanent Injunction and Other Equitable Relief against Skechers and its Skechers Toning Shoes alleging violations of the Federal Trade Commission Act and specifically 15 U.S.C. § 45(a), which prohibits "unfair or deceptive acts or practices in or affecting commerce," and 15 U.S.C. § 52, which prohibits the dissemination of any false advertisement in or affecting commerce.  Actions by the Attorneys General in 44 states and the District of Columbia (the "AG Actions") were also filed against Skechers.  Consent Judgments and Agreed Final Judgments ("Consent and Agreed Final Judgments") were or will be entered in the AG Actions, settling all claims.

On June 6, 2012, Plaintiff Sonia Stalker ("Stalker") filed objections to the settlement

2

agreement as originally proposed.  The Settling Parties replied to Stalker's objections, and the Court subsequently heard oral arguments on the objections from all parties during a preliminary fairness hearing on July 24, 2012.  At that hearing the Court granted the Settling Parties and Stalker additional time to resolve disagreements concerning the terms of the proposed settlement. At a telephonic conference on August 3, 2012, the parties informed the Court that they had been unable to resolve their differences extra-judicially.  As a result, the Court entered an order on August 8, 2012, suggesting changes to the settlement agreement that would resolve the ongoing disputes between the parties.  On August 10, 2012, the Settling Parties filed amendments to the Settlement Agreement substantially incorporating the Court's suggested changes.  The Court is now prepared to review the issues of class certification, appointment of class counsel, preliminary approval of the settlement agreement, and setting of a schedule for further proceedings in this case, including a final fairness hearing.

## ANALYSIS

### I.      Class Certification.

The Settling Parties seek certification of a class for the purposes of settlement.  In deciding whether to certify a settlement class the Court must determine whether the proposed class is cohesive.  Cohesiveness means "that there should be a common nucleus of facts and potential legal remedies among all class members, and that the class . . . must be definable and defined for the judge."  *Manual for Complex Litigation* § 21.132 (4th ed. 2004).  In making the cohesiveness and certification determinations, a district court has broad discretion, but "it must exercise that discretion within the framework of Rule 23."  *Coleman v. Gen. Motors Acceptance Corp.*, 296 F.3d 443, 446 (6th Cir. 2002).  "The party seeking the class certification bears the burden of proof."  *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996).  First, the

moving party must "satisfy Rule 23(a)'s requirements of numerosity, commonality, typicality, and adequacy of representation." *Coleman*, 296 F.3d at 446; *see* Fed. R. Civ. P. 23(a). To do this, the district court must conduct "a rigorous analysis" to ensure that "the prerequisites of Rule 23(a) have been satisfied." *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982); *see also Ball v. Union Carbide Corp.*, 385 F.3d 713, 727 (6th Cir. 2004); *In re Am. Med. Sys.*, 75 F.3d at 1078-79. A court may not certify a class that fails to satisfy all four prerequisites. *Ball*, 385 F.3d at 727. The Rule 23 requisites are not relaxed in the settlement context. *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997). The Court should apply the Rule 23 analysis independent of a "fairness" analysis. *Id.* at 621-22.

Second, in addition to satisfying 23(a)'s prerequisites, the moving party "must demonstrate that the class fits under one of the three subdivisions of Rule 23(b)." *Coleman*, 296 F.3d at 446; Fed. R. Civ. P. 23(b); *see also Ball*, 385 F.3d at 727; *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th Cir.1998) (en banc). Here, Settling Plaintiffs claim class certification is appropriate under 23(b)(3).

The Settling Parties define the settlement class as follows:

> All persons or entities that during the Class Period - from August 1, 2008, until and including August 13, 2012 - purchased in the United States any Eligible Shoes. "Eligible Shoes" means the Skechers footwear sold in the following toning categories: (a) Shape-up rocker bottom shoes ("Shape-ups"); (b) Resistance Runner rocker bottom shoes ("Resistance Runner"); (c) Shape-up Toners/Trainers, and Tone-ups with podded outsoles ("Podded Sole Shoes"); and (d) Tone-ups non-podded sandals, boots, clogs, and trainers ("Tone-ups (Non-Podded Sole)"). Excluded from the Class are: (a) Skechers's Board members or executive-level officers, including its attorneys; (b) persons or entities who purchased the Eligible Shoes primarily for resale; (c) retailers or re-sellers of Eligible Shoes; (d) governmental entities; (e) persons or entities who purchased Eligible Shoes via the Internet or other remote means while not residing in the United States; and (f) any persons or entities who or which timely and properly excluded themselves from the Class [as provided in the Settlement Agreement].

At the preliminary fairness hearing on July 24, 2012, no party objected to this class definition.

The Court will now discuss and consider the Rule 23 requirements and the merits of the proposed settlement class.

### A. *Rule 23(a) Requirements.*

1. Numerosity.

The first requirement for class certification is that "the class be so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "There is no strict numerical test for determining impracticability of joinder." *In re Am. Med. Sys. Inc.*, 75 F.3d at 1079. "There is no automatic cut-off point at which the number of plaintiffs makes joinder impractical, thereby making a class-action suit the only viable alternative. However, sheer number of potential litigants in a class, especially if it is more than several hundred, can be the only factor needed to satisfy Rule 23(a)(1)." *Bacon v. Honda of Am. Mfg., Inc.*, 370 F.3d 565, 570 (6th Cir. 2004) (internal citations omitted). No party has objected to the presence of numerosity in this case, and the Settling Parties have represented that the proposed class is composed of hundreds of thousands, if not millions, of members who purchased Skechers Toning Shoes across the nation during a four-year period. Given this, the Court finds that the numerosity requirement of Rule 23(a)(1) is met.

2. Commonality.

The second requirement for class certification is that there be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). "Although Rule 23(a)(2) speaks of 'questions' in the plural, . . . there need only be one question common to the class." *Sprague*, 113 F.3d at 397. "It is not every common question that will suffice, however; at a sufficiently abstract level of generalization, almost any set of claims can be said to display commonality." *Id.* What the Court must look for "is a common issue the resolution of which will advance the litigation." *Id.*

No party has objected to the existence of common questions of law or fact in this case. The complaint filed by Grabowski clearly alleges both questions of law and fact that are common to the class she seeks to certify.  In particular, a common question of fact is whether wearing Skechers Toning Shoes provided the benefits promised in Skechers's advertising and marketing materials.  Common questions of law are whether  Skechers's marketing practices were unlawful, fraudulent, or unfair in violation of consumer protection statutes and whether Skechers breached the terms of an express warranty allegedly formed between the company and customers who purchased Skechers Toning Shoes.  Accordingly, the Court finds that common questions of law and fact exist and that resolution of these questions would advance the litigation.  The commonality requirement set forth in Rule 23(a)(2) is met.

       3.   Typicality.

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class."  This typicality prerequisite "determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct." *Sprague*, 133 F.3d at 399 (citing *In re Am. Med. Sys.*, 75 F.3d at 1082).  "A claim is typical if 'it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory.'"  *Beattie v. CenturyTel, Inc.*, 511 F.3d 554, 561 (6th Cir. 2007) (quoting *In re Am. Med. Sys.*, 75 F.3d at 1082).  "[F]or the district court to conclude that the typicality requirement is satisfied, 'a representative's claim need not always involve the same facts or law, provided there is a common element of fact or law.'"  *Id.* (quoting *Senter v. Gen. Motors Corp.*, 532 F.2d 511, 525 n.31 (6th Cir. 1976)).  On the other hand, a claim, if proven, is not typical if it would only prove

the named plaintiff's claim.  *See Sprague*, 133 F.3d at 399.

No party has objected to the existence of typicality in this case, and the Settling Parties represent that Grabowski's claims and injuries are typical of those experienced by the settlement class.  Grabowski and the class members were exposed to the same marketing materials that allegedly induced them to buy Skechers's products.  Additionally, the named plaintiffs allege that neither they nor the members of the proposed class received the benefits promised to them as a result of wearing Skechers Toning Shoes.  Typicality is therefore met because if Skechers Toning Shoes were incapable of conveying the benefits promised, then all class members experienced similar loss.  Grabowski's claims are typical of those accruing to all class members, and the requirement of Rule 23(a)(3) is met.

    4.    Adequacy of Representation.

The fourth requirement for class certification is that "the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  "There are two criteria for determining whether the representation of the class will be adequate: 1) The representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel."  *Senter*, 532 F.2d at 524-25. "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between the named parties and the class they seek to represent.  A class representative must be part of the class and possess the same interest and suffer the same injury as the class members."  *Amchem*, 521 U.S. at 625-26.

No party has objected to Grabowski serving as representative of the settlement class.  The injuries alleged by Grabowski are substantially the same as the injuries accruing to the class.  Also, the factual circumstances alleged by Grabowski and the legal theories on which she bases

her claims are also similar, if not identical, to those of every other class member. Accordingly, the Court finds that Grabowski, as the named representative, shares common interests with the unnamed members of the settlement class.

Under the second prong of Rule 23(a)(4), the Court must also look to the adequacy of the representative plaintiffs' representation "to determine whether class counsel are qualified, experienced and generally able to conduct the litigation." *Stout v. J.D. Byrider*, 228 F.3d 709, 717 (6th Cir. 2000). The Court is persuaded that counsel for Grabowski is qualified to fairly and adequately protect the interests of the class. In particular, counsel for Grabowski are experienced in conducting class-action litigation and are familiar with the requirements and expectations of counsel in such cases. In fact, counsel for Grabowski previously served as class counsel in an another class action against an athletics apparel company in which the alleged claims where similar to those put forth in the present case. *See In re Reebok Easytone Litigation*, No. 4:10-CV-11977-FDS (D. Mass.). Courts have previously approved class counsel with experience in conducting class actions as adequate. *See, e.g.*, *Smith v. Ajax Magnethermic Corp.*, No. 4:02-CV-0980, 2007 U.S. Dist. LEXIS 85551, at *10 (N.D. Ohio Nov. 7, 2007). In all, the Court finds that the requirements of Rule 23(a)(4) are met.

### *Rule 23(b) Requirements.*

In addition to satisfying the requirements of Rule 23(a), "parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)." *Amchem*, 521 U.S. at 614. The Settling Parties assert that the proposed class satisfies the requirements of Rule 23(b)(3).

After satisfying Rule 23(a), a class action may be maintained if "the court finds that questions of law or fact common to the class members predominate over any questions affecting

only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Rule 23(b)(3) predominance requirement parallels the Rule 23(a)(2) commonality requirement in "that both require that common questions exist, but subdivision (b)(3) contains the more stringent requirement that common issues 'predominate' over individual issues." *In re Am. Med. Sys., Inc.*, 75 F.3d at 1084. "To satisfy the predominance requirement in Rule 23(b)(3), a plaintiff must establish that the issues in the class action that are subject to generalized proof . . . predominate over those issues that are subject only to individualized proof." *Beattie*, 511 F.3d at 564 (internal quotation marks and citation omitted). A district court must determine if the questions common to the class are "at the heart of the litigation." *Powers v. Hamilton County Public Defender Com'n*, 501 F.3d 592, 619 (6th Cir. 2007). "[T]he mere fact that questions peculiar to each individual member of the class action remain after the common questions of the defendant's liability have been resolved does not dictate the conclusion that a class action is impermissible." *Sterling v. Velsicol Chem. Corp.*, 855 F.2d 1188, 1197 (6th Cir. 1988). "The predominance requirement is satisfied unless it is clear that individual issues will overwhelm the common questions and render the class action valueless." *In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 297, 307 (E.D. Mich. 2001). "Common questions need only predominate: they need not be dispositive of the litigation." *Id.*

The Court finds that common questions of law and fact predominate over the individual issues in this case. In fact, no party has objected to class certification on the grounds that individual issues outweigh the predominate questions of law and fact that are common to the class. The issues in this case turn on whether Skechers violated the consumer protection laws. Whether Skechers violated these laws through misleading and deceptive sales and marketing

9

practices is a question that is common to all class members.  The proof that the representative plaintiffs would be required to produce in order to substantiate their allegations would be the same proof required of all class members.  Without a determination on these common questions, no class member, proceeding collectively or individually, would be entitled to any recovery. "There are no bright lines for determining whether common questions predominate.  Instead, considering the facts of the case presented, a claim will meet the predominance requirement when there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis."  *In re Cardizem*, 200 F.R.D. at 307 (citing *In re Potash Antitrust Litig.*, 159 F.R.D. 682, 693 (D. Minn. 1995)).  The generalized proof that class members would be required to produce in order to prove that Skechers violated certain consumer protection laws demonstrates that common, class-wide questions predominate in this case.

Additionally, class action represents a superior means of fairly and efficiently adjudicating this case.  As the Settling Parties point out, the amount of damages incurred by individual class members would be insufficient to justify pursuing individual actions, thereby making a class action a valuable tool for all class members.  *See Pfaff v. Whole Foods Mkt. Grp. Inc.*, No. 1:09-CV-02954, 2010 WL 3834240, at *7 (N.D. Ohio Sept. 29, 2010) ("[T]he most compelling rationale for finding superiority in a class action is the existence of a 'negative value suit,' . . . one in which the costs of enforcement in an individual action would exceed the expected individual recovery.").  Therefore, the Court finds that the common questions in this case are not overshadowed by the individual issues, and that certification of a settlement class is appropriate.  The commonality and superiority requirements of Rule 23(b)(3) are satisfied.

Having considered the requirements of Rule 23(a) and Rule 23(b)(3) and finding them to be satisfied, the Court finds that the proposed class defined in the settlement agreement is

10

certified for the purposes of settlement.

## II.   Appointment of Class Counsel.

"[A] court that certifies a class must appoint class counsel."  Fed. R. Civ. P. 23(g).  In

making that determination, the Court must consider:

> (i) the work counsel has done in identifying or investigating potential claims in
> the action; (ii) counsel's experience in handling class actions, other complex
> litigation, and the types of claims asserted in the action; (iii) counsel's knowledge
> of the applicable law; and (iv) the resources that counsel will commit to
> representing the class.

Fed. R. Civ. P. 23(g)(a).

In the present case, counsel for Grabowski has moved for appointment as class counsel.

In support of their motion, counsel represent that they have conducted a thorough examination,

investigation, and evaluation of the relevant law, facts, and allegations while assessing the merits

of the plaintiffs' claims.  In particular, counsel for Grabowski and has already engaged in

extensive discovery.  Skechers has produced the following documentation regarding the

Skechers Toning Shoes to counsel for Grabowski: (i) product design, initiative and development;

(ii) scientific studies and research; (iii) marketing, advertising, media and public relations; and

(iv) sales and pricing data.  In total, counsel was given access to approximately 6,574 documents

encompassing over 24,500 pages and over 13.5 GB of data.  Skechers also has given counsel for

Grabowski access to key personnel at Skechers to interview and depose.  Furthermore, counsel

for Grabowski have been instrumental and deeply involved in arms-length negotiations with

Skechers and the FTC, the result of which is the proposed settlement currently pending before

the Court and the settlements with the FTC and states' Attorneys General.  Also, as pointed out

above, counsel for Grabowski are experienced in pursuing and managing class actions, and more

particularly, counsel recently served as class counsel in a similar class action involving the

products of another athletics apparel company.  Finally, proposed class counsel has shown a

willingness to commit substantial time and resources to representing the claims of the class.

Having considered the motion for appointment of class counsel, the Court finds that counsel for

Grabowski will fairly and adequately represent the interests of the class.  Accordingly, Timothy

G. Blood, of Blood Hurst & O'Reardon LLP, and Janie L. Pollack, of Milberg LLP, are hereby

designated as counsel for the certified settlement class.

### III.   Preliminary Approval of the Settlement Agreement.

Class actions may only be settled with the court's approval.  Fed. R. Civ. P. 23(e).

Approval of class settlements is often bifurcated into preliminary and final approval proceedings.

"At the stage of preliminary approval, the questions are simpler, and the court is not expected to,

and probably should not, engage in analysis as rigorous as is appropriate for final approval."

David F. Herr, *Annotated Manual for Complex Litigation (Fourth)* § 21.662 (2012).  Instead, the

Court must only "make a preliminary determination on the fairness, reasonableness, and

adequacy of the settlement terms and must direct the preparation of notice of certification,

proposed settlement, and date of the final fairness hearing."  *Manual for Complex Litigation* §

21.632 (4th ed. 2004); *see* Fed. R. Civ. P. 23(e)(2) ("[T]he court may only approve [the

settlement] after a hearing and on finding that it is fair, reasonable, and adequate.").  Fairness,

reasonableness, and adequacy are separate determinations.

> Fairness calls for a comparative analysis of the treatment of class members vis-á-
> vis each other and vis-á-vis similar individuals with similar claims who are not in
> the class.  Reasonableness depends on an analysis of the class allegations and
> claims and the responsiveness of the settlement to those claims.  Adequacy of the
> settlement involves a comparison of the relief granted relative to what class
> members might have obtained without using the class action process.

*Manual for Complex Litigation* § 21.62 (4th ed. 2004).  In making these determinations, the

Court "must take care not to intrude upon the private settlement negotiations of the parties any

more than is necessary to determine that the agreement is not the result of fraud or collusion, and that it is fair and adequate in light of the potential outcome and costs of litigation." *Ajax Magnethermic Corp.*, 2007 U.S. Dist. LEXIS 85551, at *14.  In the face of a motion for preliminary approval, the Court's role is to "evaluate whether the proposed settlement 'appears to be the product of serious, informed, non-collusive negotiation, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval.'"  *Hyland v. HomeServices of Am., Inc.*, No. 3:05-CV-612, 2012 WL 122608, at *2 (W.D. Ky. Jan. 17, 2012) (quoting *In re Nasdaq Market-Makers Antitrust Litig.*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997)).

### A.   The Proposed Settlement is Fair, Reasonable, and Adequate

Upon preliminary review, the Court finds that the proposed settlement agreement is fair, reasonable, and adequate.  Under the agreement, Skechers has agreed to establish a $40 million, non-reversionary fund to be used for the payment of class claims.  Two factors determine the amount class members will recover from the settlement fund.  First, benefit amounts are differentiated based on the type of Skechers Toning Shoe claimants purchased.  For example, claimants who purchased "Shape-Ups" will receive a larger payment than those who purchased "Podded Sole Shoes" because Shape-Ups were a more expensive product.  Second, disbursements from the settlement fund will be paid on an "Initial" and "Maximum" basis.  The "Initial Amount" of the cash disbursement is calculated so as to exceed class members' likely alternative measure of damages - the difference between the purchase price for the product as represented and the value of the product received.  The "Maximum Amount" is calculated to fully compensate class members for the purchase price of their Skechers Toning Shoes.  The maximum amount is double the initial amount and will only become available to claimants if,

after the processing of all claims, settlement funds remain available.  Based on the amount of funds still available and on the number of claimants, the "Initial Amount" will then be increased on a pro-rata basis until the "Maximum Amount" is paid to claimants.  It should be noted that the initial amount of the payment may be reduced on a pro-rata basis if there are more claimants than initially expected.  The Settling Parties have represented to the Court that they do not expect this situation to arise, however.  The following table displays the disbursement amounts available to class members who timely submit their claims:

| Shoes | Initial Amount | Maximum Amount |
|---|---|---|
| Shape-Ups | $40.00 | $80.00 |
| Podded Sole Shoes | $27.00 | $54.00 |
| Tone-Ups (Non-Podded Sole) | $20.00 | $40.00 |
| Resistance Runner | $42.00 | $84.00 |

The proposed settlement is fair.  "Fairness calls for a comparative analysis of the treatment of class members vis-á-vis each other and vis-á-vis similar individuals with similar claims who are not in the class."  *Manual for Complex Litigation* § 21.62 (4th ed. 2004).  The terms of the settlement are fair to the class members because members are treated equally with differentiation only based on the price of the Skechers product they purchased.  The settlement is fair as between class and non-class members to the extent that the settlement class is comprehensively defined so that only a small number of consumers of Skechers Toning Shoes are beyond the settlement's coverage.

Next, the proposed settlement is reasonable.  "Reasonableness depends on an analysis of the class allegations and claims and the responsiveness of the settlement to those claims."  *Id.* Grabowski alleges that Skechers's false and misleading marketing practices caused her to

purchase a product that was incapable of conferring the benefits promised.  The settlement is reasonable because the two types of available payments are sufficient to ameliorate the economic injuries suffered by the class.  First, claimants receiving the "Initial Amount" will receive an amount calculated to satisfy the difference between the price consumers paid for the Skechers Toning Shoes and the value of the product they ultimately received.  Second, if settlement funds remain after all claims are processed, class member will receive the "Maximum Amount," which is calculated to fully reimburse class members for their purchases.  These amounts make the settlement eminently reasonable.

Finally, the proposed settlement is adequate.  "Adequacy of the settlement involves a comparison of the relief granted relative to what class members might have obtained without using the class action process."  *Id.*  The economic injury allegedly suffered by each class member is small.  For a claimant who only purchased one pair of Skechers Toning Shoes, the amount of damages is likely less than $100.  Absent a class action, class members would not be able to recover their individual damages.  Only by proceeding in aggregate does the potential amount of damages become sufficient to provide for the payment of the expenses necessary to pursue the alleged claims.  Accordingly, the proposed settlement is more than adequate because it allows class members to recover damages that would otherwise be beyond their reach if proceeding individually.

At this preliminary stage the Court finds the settlement agreement to be fair, reasonable, and adequate.

### B. The Proposed Settlement is the Product of Serious Negotiations, is not the Result of Collusion, and Falls Within the Range of Possible Approval.

Even though the Court has determined that the settlement is fair, reasonable, and adequate, it must also ensure that the settlement is the product of serious negotiations, that there

is no indication of collusive action, and that it falls within the range of possible approval.  *See Hyland*, 2012 WL 122608, at *2.  When a "settlement is the result of extensive negotiations by experienced counsel, the Court should presume it fair."  *In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 330, 351 (N.D. Ohio 2001) (citation omitted).

The Settling Parties have demonstrated to the Court that the proposed settlement was agreed upon after arm's length negotiations and a sufficient exchange of discovery material, including documents and witnesses.  Evidence shows that though the settlement agreement was finally agreed upon in May 2012, negotiations began in December 2010 with the parties reaching agreement on some substantive issues as early as March 2011.  From March 2011 through November 2011, the Settling Parties exchanged discovery materials that allowed Grabowski to develop her claims and value her case.  By November 2011, the framework of the proposed settlement agreement was agreed upon, including the dollar amount of class relief.  Finally from November 2011 through May 2012, the Settling Parties completed settlement negotiations, drafted the specific terms of the settlement agreement, and made preparation for the administration of the settlement program, including class notification and electronic claims processing.

No party has objected to the settlement agreement claiming that it was not properly negotiated or is the result of collusive practice.  The history of this litigation shows that the Settling Parties have produced a fair settlement that was negotiated at arm's length by equal parties and that it was not tainted by any form collusion.

Additionally, the Court finds that the settlement agreement falls well within the range of possible solutions that would receive approval.  The settlement class is sufficiently broad to cover a substantial majority of individuals purchasing Skechers Toning Shoes.  Payment of relief

is aimed at putting class members in the position they would have been in had they received the full benefit of the product marketed to them, and, if funds remain after the initial claims have been process, class members may be made whole by a full refund of the purchase price of their shoes.  Not only is this agreement in the range of possible solutions, it is likely the best resolution that class members could receive absent receipt of the product actually marketed to them.

### C.  Attorneys' Fees.

Class counsel seeks preliminary approval of an award of attorneys' fees in the amount of $5 million.  Skechers agrees with class counsel's proposal.  This aggregate amount for fees and expenses is in addition to and separate from the $40 million, non-reversionary settlement fund.  Any payment of attorneys' fees and expenses will be awarded out of the $5 million attorneys' fees fund and will not be paid from the funds set aside for payment of class members' claims.

When preliminarily approving a class settlement, the Court's "settlement review should include provisions for payment of class counsel."  *Manual for Complex Litigation* § 21.7 (4th ed. 2004).  The benchmark for the preliminary approval of awards of attorneys' fees is 25% of the common fund.  *See, e.g.*, *Fournier v. PFS Invs., Inc.* 997 F. Supp. 828, 832 (E.D. Mich. 1998) ("The 'benchmark' percentage for this standard has been 25% [of the common fund], with the ordinary range for attorney's fees between 20-30%.").  Of course, the present case does not involve the payment of attorneys' fees and expenses out of the common fund.  Rather, fees and expenses are paid from a fund separate to and in excess of the common fund.  The Court notes, however, that if the requested award of fees and expenses was paid out of the common fund, this would only represent 12.5% of the common fund, well below the benchmark that is often approved.

At the present time, the Court preliminarily approves an aggregate award of $5 million in attorneys' fees and expenses.  Payment of fees and expenses to all eligible counsel will not exceed this amount.  At the appropriate time, counsel believing that they should be awarded fees and expenses shall move the Court for the award.  The motions for fees and awards shall be made in compliance with Federal Rule of Civil Procedure 23(h) and 54(d)(2).  Before any counsel will receive fees and expenses from the attorneys' fees fund, counsel must demonstrate to the Court that their efforts resulted in a benefit to the class.  Only upon a showing that a benefit accrued to the class as a result of counsel's efforts will fees and expenses be awarded.

Finally, the Court notes that it is not yet granting final approval of the proposed award of fees and will undertake a more rigorous review of this provision prior to final approval of the settlement agreement.

### D.  The Notice Program is Calculated to Apprise Class Members of the Settlement and Their Rights Arising Thereunder.

When approving a settlement agreement Federal Rule of Civil Procedure 23(e)(1) requires that a court "direct notice in a reasonable matter to all class members who would be bound by the proposal."  All that notice must do "is fairly apprise . . . prospective members of the class of the terms of the proposed settlement so that class members may come to their own conclusions about whether the settlement serves their interests."  *Gooch v. Life Inv. Ins. Co. of Am.*, 672 F.3d 402, 423 (6th Cir. 2012) (citation omitted).  The terms and contents of class notice are sufficient:

> if they inform the class members of the nature of the pending action, the general terms of the settlement, that complete and detailed information is available from the court files, . . . that any class member may appear and be heard at the hearing and information [about] the class members' right to exclude themselves and the results of failure to do so. A proposed notice that is incomplete or erroneous or that fails to apprise the absent class members of their rights will be rejected as it would be ineffective to ensure due process.

18

*Id.* (internal citations and quotations omitted).

In the present action the Settling Parties have submitted the proposed manner and content of notice for review by the Court.  Both the long form Class Notice and the Summary Settlement Notice comply with the principles outlined above and satisfy the requirements of due process. The Notice is written in simple, straightforward language and includes: (1) basic information about the lawsuit; (2) a description of the benefits provided by the settlement; (3) an explanation of how class members can obtain settlement benefits; (4) an explanation of how class members can exercise their right to opt-out or object to the settlement; (5) an explanation that any claims against Skechers that could have been litigated in this action will be released if the class member does not opt out of the settlement; (6) the names of class counsel and information regarding attorneys' fees and expenses, as well as incentive awards to the representative plaintiffs; (7) the final fairness hearing date; (8) an explanation of eligibility for appearing at the final fairness fearing; and (9) the settlement website and a toll free number where additional information can be obtained.  The Notice also informs class members that plaintiffs' final approval papers and request for attorneys' fees will be filed prior to the objection deadline.  The comprehensive nature of the class notice leaves little doubt that, upon receipt, class members will be able to make an informed and intelligent decision about participating in the settlement.

The Settling Parties have also established a comprehensive program for distributing notice to the settlement class.  Through direct mailing, hard copy or print advertising, and electronic distribution through various websites and social media facilities, the Settling Parties represent that the notice program is designed to reach well over three-quarters of the class members.  Additionally, the Settling Parties have established a settlement website.  Class members will be directed to this website through the notice program, and once at the website

they will be able to submit claims and access to a comprehensive catalogue of information concerning this litigation.

In all, the Court finds that both the contents of the notice and the notice program are sufficient to alert class members of their rights arising under the settlement. Accordingly, the notice provisions established by the Settling Parties fully comply with the requirements of Rule 23.

### E.  Injunction Against Parallel Proceedings in Other State and Federal Courts.

Finally, as part of the settlement agreement, the Settling Parties move for an injunction that would enjoin all similar class actions proceeding in other state and federal courts. The Settling Parties ask the Court to issue this injunction pursuant to its authority under the All Writs Act, 28 U.S.C. § 1651(a) and the Anti-Injunction Act, 28 U.S.C. § 2283. These acts work in conjunction with one another, and the Court finds that an injunction is necessary in aid of the Court's jurisdiction in order to avoid confusion of the issues and interference with administration of the approved settlement.

Under the All Writs Act, federal courts are given the authority to "issue all writs necessary or appropriate in the aid of their jurisdictions and agreeable to the usages and principles of law."  28 U.S.C. § 1651(a).  Although the terms of the All Writs Act can be read to allow federal courts to enjoin actions proceeding in state court, that power is tempered by the Anti-Injunction Act.  See 17A James Wm. Moore, Moore's Federal Practice § 121.11 (3d ed. 2012) (explaining that the Anti-Injunction Act limits federal courts' broad authority under the All Writs Act).  The Anti-Injunction Act provides that "[a] court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."

28 U.S.C. § 2283.  In the present case, the Court enjoins parallel proceedings in state and federal court because such an injunction is "necessary in aid of [the Court's] jurisdiction."

The "necessary in aid of" exemption to the Anti-Injunction Act has routinely been invoked in "multidistrict litigations when a parallel state proceeding threatens the court's ability to manage the litigation effectively."  Moore, *supra* § 121.07; *see In re Bawldwin-United Corp.*, 770 F.2d 323, 337 (2d Cir. 1985) (affirming an injunction on state court proceedings where "[t]he existence of multiple and harassing actions by the state could only serve to frustrate the district court's efforts to craft a settlement in the multidistrict litigation"); *James v. Bellotti*, 733 F.2d 989, 994 (1st Cir. 1984) (indicating that the existence of a provisionally-approved settlement would justify a protective injunction against state court suits brought by the same parties); *In re Corrugated Container Antitrust Litig.*, 659 F.2d 1332, 1334 (5th Cir. 1981) (affirming an injunction on state court proceedings where the multidistrict litigation involved a "complicated antitrust action [that] required a great deal of the district court's time and [required it to] maintain a flexible approach in resolving the various claims of the many parties").

In the present case, all federally filed class actions alleging consumer fraud and economic injuries have been transferred to this Court for consolidated proceedings as part of the *In re Skechers Toning Shoe Products Liability Litigation*.[1]  That said, the Court is aware of at least three state court actions asserting claims similar to those alleged by Grabowski.[2]  The Court has been informed that at least one of the actions pending in Arkansas state court is proceeding

---

[1] The following cases at the federal class actions transferred to this Court by order of the Judicial Panel on Multidistrict Litigation or by order of this Court: *Grabowski v. Skechers U.S.A., Inc.*, No. 3:10-CV-01300 (S.D. Cal.); *Morga v. Skechers U.S.A., Inc.*, No. 3:10-CV-1780 (S.D. Cal.); *Stalker v. Skechers U.S.A., Inc.*, No. 2:10-CV-05460 (C.D. Cal.); *Hochberg v. Skechers U.S.A., Inc.*, No. 1:11-CV-05751 (E.D.N.Y.); *Loss v. Skechers U.S.A., Inc.*, No 3:12-CV-78-H (W.D. Ky.); *Boatright v. Skechers U.S.A., Inc.*, 3:12-CV-87-S (W.D. Ky.).

[2] The following are state class actions that assert similar claims to those pending before this Court but are not currently subject to the Court's jurisdiction: *Tomlinson v. Skechers U.S.A., Inc.*, No. CV2011-121-7 (Ark. Cir. Ct.); *Lovston v. Skechers U.S.A., Inc.*, No. CV-11-321 (Ark. Cir. Ct.); *Scovil v. Skechers U.S.A., Inc.*, No. A-12-660756-C (Dist. Ct., Clark Cnty., Nevada).

toward class certification.  Although the Court is not aware of the class definition proposed in that case, it will likely overlap and interfere with the class certified for settlement in this case given the comprehensive class defined in the Settlement Agreement.  Furthermore, as this settlement agreement moves toward final approval it is increasingly possible that the state court could order or enjoin conduct that would prevent the Settling Parties in this case from reaching a final resolution.  In such a situation, an injunction issued in aid of the Court's jurisdiction over this matter is necessary and reasonable.  *See Winkler v. Eli Lilly & Co.*, 101 F.3d 1196, 1202 (7th Cir. 1996) ("[C]ourt have extended the [necessary-in-aid-of] exception to consolidated multidistrict litigation, where a parallel state court action threatens to frustrate proceedings and disrupt the ordered resolution of the federal litigation.").

The Court finds that issuance of an injunction is necessary in aid of its jurisdiction over this case in order to prevent frustration and disruption in the resolution of these issues.  The specific terms of the injunction are described in the Court's orders below.

### F.  Schedule of Events

The Court has approved the settlement agreement and notice program as detailed in the foregoing analysis.  At this time, the notice program should begin and this action should move toward a final fairness hearing.  The remainder of this action will proceed according to the following schedule:

| Event | Date |
|---|---|
| Notice dissemination to the Class commences | September 9, 2012 (30 calendar days after entry of the Preliminary Approval Order) |
| Notice dissemination to be substantially completed | November 15, 2012 (124 days before Final Fairness Hearing) |
| Last day class members may opt out of or file objections to the Settlement | January 14, 2013 (Postmark 64 days before the Final Fairness Hearing and 60 days after completion of notice program) |
| Parties to file briefs supporting final approval of the Settlement and responses to objections | February 1, 2013 (45 days before the Final Fairness Hearing) |
| Parties to file supplemental briefs in support of final approval of the Settlement and in response to objections | March 12, 2013 (7 days before the Final Fairness Hearing) |
| Final Fairness Hearing | March 19, 2013 (218 days after entry of the Preliminary Approval Order |

## CONCLUSION

The Settling Parties have moved for preliminary approval of the proposed settlement agreement, certification of a class for the purposes of settlement, and the establishment of a schedule to governing the remaining proceedings.  Having considered these matters and being fully advised, **IT IS on this the 13th day of August, 2012, ORDERED, ADJUDGED, AND DECREED** as follows (all capitalized terms being defined as they are defined in the Settlement Agreement unless otherwise specified or defined herein):

1. **Stay of the Action.**  All non-settlement-related proceedings in the Action are hereby stayed and suspended until further order of this Court.

2. **Preliminary Class Certification for Settlement Purposes Only.**  The Action is preliminarily certified as a class action for settlement purposes only, pursuant to Fed. R. Civ. P.

23

23(a) and (b)(3).  The Court's finding in accordance with Rules 23(a) and 23(b)(3) are described in the above-conducted analysis.

3.  **Class Definition.**  The Class shall consist of all persons or entities that, during the Class Period, August 1, 2008, until and including August 13, 2012, purchased in the United States any Eligible Shoes.  "Eligible Shoes" means the Skechers' footwear sold in the following toning categories: (a) Shape-ups rocker bottom shoes ("Shape-ups"); (b) Resistance Runner rocker bottom shoes ("Resistance Runner"); (c) Shape-ups Toners/Trainers, and Tone-ups with podded outsoles ("Podded Sole Shoes"); and (d) Tone-ups non-podded sandals, boots, clogs, and trainers ("Tone-up (Non-Podded Sole)"). Excluded from the Class are: (a) Skechers' Board members or executive-level officers, including its attorneys; (b) persons or entities who purchased the Eligible Shoes primarily for the purpose of resale; (c) retailers or re-sellers of Eligible Shoes; (d) governmental entities; (e) persons or entities who purchased the Eligible Shoes via the Internet or other remote means while not residing in the United States; and (f) any persons or entities who or which timely and properly excluded themselves from the Class as provided for below.

4.  **Class Representatives and Class Counsel.**  Plaintiff Grabowski is designated as representative of the conditionally certified Class.  As discussed above, the Court preliminarily finds that she is similarly situated to absent Class Members and therefore typical of the Class, and that she will be an adequate Class Representative.  Timothy G. Blood, of Blood Hurst & O'Reardon LLP; and Janine L. Pollack, of Milberg LLP, whom the Court finds are experienced and adequate counsel, are hereby designated as Class Counsel.

5.  **Preliminary Settlement Approval.**  Upon preliminary review, the Court finds that the Settlement Agreement and the settlement it incorporates, appears fair, reasonable and

adequate as discussed in the above-conducted analysis.  Accordingly, the Settlement Agreement is preliminarily approved and is sufficient to warrant sending notice to the Class.

6.  **Jurisdiction.**  The Court has subject-matter jurisdiction over the Action pursuant to 28 U.S.C. §§ 1332 and 1367, and personal jurisdiction over the Parties before it.  Additionally, venue is proper in this District pursuant to 28 U.S.C. § 1391.

7.  **Fairness Hearing.  <u>A Fairness Hearing shall be held on March 19, 2013 at 1:00pm EST</u>** at the United States District Court for the Western District of Kentucky, 601 West Broadway, Louisville, Kentucky 40202-2227, to determine, among other things: (a) whether the Action should be finally certified as a class action for settlement purposes pursuant to Fed. R. Civ. P. 23(a), and (b)(3); (b) whether the settlement of the Action should be approved as fair, reasonable and adequate, and finally approved pursuant to Fed. R. Civ. P. 23(e); (c) whether the Action should be dismissed with prejudice pursuant to the terms of the Settlement Agreement; (d) whether Class Members should be bound by the release set forth in the Settlement Agreement; (e) whether Class Members and related persons should be subject to a permanent injunction; (f) whether the application of Class Counsel for an award of Attorneys' Fees and Expenses should be approved pursuant to Fed. R. Civ. P. 23(h); and (g) whether the application of the named Plaintiffs for incentive awards should be approved.  The submissions of the Parties in support of the settlement, including Plaintiffs' Counsel's application for Attorneys' Fees and Expenses and incentive awards, shall be filed with the Court no later than fifteen (15) days prior to the deadline for the submission of objections and may be supplemented up to seven days prior to the Fairness Hearing.

8.  **Administration.**  In consultation with and with the approval of Skechers, Class Counsel is hereby authorized to establish the means necessary to administer the proposed

settlement and implement the Claim Process, in accordance with the terms of the Agreement.

9. **Class Notice.**  The proposed Class Notice, Summary Settlement Notice and the notice methodology described in the Settlement Agreement and the Declaration of the Media Notice Administrator are hereby approved in accordance with the Court's analysis conducted above.

a. Pursuant to the Settlement Agreement, the Court appoints Jeanne Finegan of the Garden City Group, Inc. to be the Media Notice Administrator and BMC Group to be the Class Action Settlement Administrator to help implement the terms of the Settlement Agreement.

b. Beginning not later than thirty (30) days after entry of this Preliminary Approval Order and to be substantially completed not later than one hundred and twenty-four days (124) days before the Fairness Hearing and subject to the requirements of the Preliminary Approval Order and the Settlement Agreement, the Class Action Settlement Administrator shall commence sending the Class Notice by First Class U.S. Mail, proper postage prepaid, to: (i) each reasonably identifiable Class Member's last known address reasonably obtainable from Skechers, which addresses shall be provided to the Class Action Settlement Administrator by Skechers no later than five (5) business days after entry of this Preliminary Approval Order, subject to the existence of such information and its current possession, if at all, by Skechers; and (ii) each appropriate State and Federal official, as specified in 28 U.S.C. § 1715.  The distribution of the Class Notice shall otherwise comply with Fed. R. Civ. P. 23 and any other applicable statute, law, or rule, including, but not limited to, the Due Process Clause of the

United States Constitution.

     c.     The Class Action Settlement Administrator shall: (a) promptly re-mail any notices returned by the United States Postal Service with a forwarding address that are received by the Class Action Settlement Administrator at least forty-five (45) days before the Fairness Hearing; (b) by itself or using one or more address research firms, as soon as practicable following receipt of any returned notices that do not include a forwarding address, research any such returned mail for better addresses and promptly mail copies of the Class Notice to the better addresses so found.

     d.     The Media Notice Administrator shall begin publication of the Summary Settlement Notice not later than thirty (30) days after entry of this Preliminary Approval Order, and shall have the publication of the Summary Settlement Notice completed not later than one hundred and twenty-four (124) days thereafter.  The Media Notice Administrator shall publish the Summary Settlement Notice as described in the Declaration of the Media Notice Administrator and in such additional newspapers, magazines and/or other media outlets as shall be agreed upon by the Parties.

     e.     The Class Action Settlement Administrator shall begin accepting Claim Forms as they are submitted by Class Members for processing, which shall begin no later than six (6) months after entry of this Preliminary Approval Order.

     f.     The Class Action Settlement Administrator shall establish an Internet website, www.Skecherssettlement.com, which will inform Class Members of the terms of this Agreement, their rights, dates and deadlines, and

related information.  The website shall include, in .pdf format, materials agreed upon by the Parties and/or required by the Court, and will be operational and live by the date of the first publication of the Summary Settlement Notice or mailing of the Class Notice, whichever is earlier.

g.      The Class Action Settlement Administrator shall establish a toll-free telephone number that will provide Settlement-related information to Class Members.  This toll-free telephone number will be operational by the date of the first publication of the Summary Settlement Notice or mailing of the Class Notice, whichever is earlier.

h.      Not later than ten (10) days before the date of the Fairness Hearing, the Class Action Settlement Administrator shall file with the Court a list of those persons who have opted out or excluded themselves from the Settlement.

i.      Not later than forty-five (45) days before the date of the Fairness Hearing, the Media Notice Administrator or the Class Action Settlement Administrator shall file with the Court the details outlining the scope, methods, and results of the media notice program.

10. **Findings Concerning Notice**.  The Court, in accordance with its above-stated conclusions, finds that the form, content and method of giving notice to the Class as described in Paragraph 9 of this order: (a) will constitute the best practicable notice; (b) is reasonably calculated, under the circumstances, to apprise the Class Members of the pendency of the Action, the terms of the proposed settlement, and their rights under the proposed settlement, including, but not limited to, their right to object to or exclude themselves from the proposed settlement and other rights under the terms of the Settlement Agreement; (c) are reasonable and constitute due,

28

adequate, and sufficient notice to all Class Members and other persons entitled to receive notice; and (d) meet all applicable requirements of law, including, but not limited to, 28 U.S.C. § 1715, Fed. R. Civ. P. 23(c) and (e) and the Due Process Clause(s) of the United States Constitution. The Court further finds that all of the notices are written in simple terminology, are readily understandable by Class Members, and comply with the Federal Judicial Center's illustrative class action notices.

     11. **Exclusion from Class.**  Any Class Member who wishes to be excluded from the Class must mail a signed, written request for exclusion to the Class Action Settlement Administrator at the addressed provided in the Class Notice, postmarked no later than sixty-four (64) days before the date scheduled in paragraph 7 above for the Fairness Hearing, or as the Court otherwise may direct.  Any person or entity requesting exclusion is requested to include in the signed written request the information set forth in Part VII of the Class Notice.  The Class Action Settlement Administrator shall forward copies of any written requests for exclusion to Class Counsel and Skechers' Counsel.  The Class Action Settlement Administrator shall file a list reflecting all timely requests for exclusion with the Court no later than ten (10) days before the Fairness Hearing.  If the proposed settlement is finally approved, any potential Class Member who has not submitted a timely written request for exclusion from the Class shall be bound by all subsequent proceedings, orders and judgments in the Action, including but not limited to the Release, even if the potential Class Member previously initiated or subsequently initiates any litigation against any or all of the Released Parties relating to the claims and transaction released in the Action.  Persons who properly exclude themselves from the Class shall not be entitled to participate in the benefits of the Settlement Agreement.  Skechers' Counsel shall provide to the Class Action Settlement Administrator, within ten (10) business days of the entry of this

29

Preliminary Approval Order, a list of all counsel for anyone who has litigation against Skechers

that involves Eligible Shoes. The Class Action Settlement Administrator shall mail copies of the

Class Notice to all such legal counsel.  Skechers will promptly direct the Class Action Settlement

Administrator to serve the Class Notice on counsel for any Class Members who subsequently

initiate litigation, arbitration, or other proceedings against Skechers relating to claims alleging

events occurring during the Class Period, the Eligible Shoes, and/or otherwise involving the

Release.

       12. **Objections and Appearances.**  Any Class Member or counsel hired at any Class

Member's own expense who complies with the requirements of this paragraph may object to any

aspect of the proposed settlement.

       a.       Any Class Member who has not filed a timely written request for

exclusion and who wishes to object to the fairness, reasonableness, or adequacy of

the Settlement Agreement, the proposed Settlement, the award of Attorneys' Fees

and Expenses, or the individual awards to Plaintiffs, must deliver to the Class

Counsel identified in the Class Notice and to Skechers' Counsel, and file with the

Court, no later than thirty (30) days before the date scheduled in paragraph 7

above for the Fairness Hearing, or as the Court otherwise may direct: (a) a written

statement of objections, as well as the specific reason(s), if any, for each

objection, including any legal and factual support the Class Member wishes to

bring to the Court's attention; (b) any evidence or other information the Class

Member wishes to introduce in support of the objections; (c) a statement of

whether the Class Member intends to appear and argue at the Fairness Hearing;

and (d) a list all the Class Member's purchase(s) of Eligible Shoes.  Class

Members may do so either on their own or through an attorney retained at their own expense.  The objection must include proof of purchase of the Eligible Shoes.  Acceptable proof of purchase includes an itemized cash register receipt, a credit card receipt or a credit card statement that sufficiently indicates the purchase of the Eligible Shoes.  Any Class Member filing an objection may be required to sit for deposition regarding matters concerning the objection.

b.      Any Class Member who files and serves a written objection, as described above, may appear at the Fairness Hearing, either in person or through personal counsel hired at the Class Member's expense, to object to the fairness, reasonableness, or adequacy of the Settlement Agreement or the proposed Settlement, or to the award of Attorneys' Fees and Expenses or awards to the individual Plaintiffs.  Class Members or their attorneys who intend to make an appearance at the Fairness Hearing must deliver a notice of intention to appear to one of the Class Counsel identified in the Class Notice and to Skechers' Counsel, and file said notice with the Court, no later than thirty (30) days before the date scheduled in paragraph 7 above for the Fairness Hearing, or as the Court may otherwise direct.  Any Class Member who fails to comply with the provisions in this section shall waive and forfeit any and all rights he or she may have to appear separately and/or to object, and shall be bound by all the terms of the Settlement Agreement, this Order, and by all proceedings, orders, and judgments, including, but not limited to, the Release in the Settlement Agreement in the Action.

13. **Preliminary Injunction.**  All Class Members and/or their representatives who do not timely exclude themselves from the Class are hereby preliminarily barred and enjoined from

31

filing, commencing, prosecuting, maintaining, intervening in, participating in, conducting, or

continuing litigation as class members, putative class members, or otherwise against Skechers (or

against any of its related parties or affiliates), and/or from receiving any benefits from, any

lawsuit, administrative, or regulatory proceeding or order in any jurisdiction, based on or relating

to the claims or causes of actions or the facts, and circumstances relating thereto, relating to the

Eligible Shoes, the Action, and/or the Release. In addition, all such persons are hereby

preliminarily barred and enjoined from filing, commencing, or prosecuting a lawsuit against

Skechers (or against any of its related parties or affiliates) as a class action, a separate class, or

group for purposes of pursuing a putative class action (including by seeking to amend a pending

complaint to include class allegations or by seeking class certification in a pending action in any

jurisdiction) on behalf of Class Members who do not timely exclude themselves from the Class,

arising out of, based on or relating to the claims, causes of action, facts and/or circumstances

relating thereto, relating to the Eligible Shoes, the Action and/or the Release.  This injunction

includes, but is not limited to, the following actions which are proceeding as proposed class

actions *Morga v. Skechers U.S.A., Inc.*, No. 3:10-CV-1780 (S.D. Cal. filed August 25, 2010);

*Hochberg v. Skechers U.S.A. Inc.*, No. CV11-5751 (E.D.N.Y. filed Nov. 23, 2011); *Loveston v.

Skechers U.S.A., Inc.*, No. $:11-CV-0460 DPM (E.D. Ark. Filed May 13, 2011); *Loveston v.

Skechers U.S.A., Inc.*, No. CV-11-321 (Ark. Cir. Cit.); *Tomlinson v. Skechers U.S.A., Inc.*, No.

CV 2011-121-7 (Ark. Cir. Ct. filed Jan. 13, 2011); *Tomlinson v. Skechers U.S.A., Inc.*, No. 5:11-

CV-05042 JLH (W.D. Ark.); *Stalker v. Skechers U.S.A., Inc.*, No. CV 10-05460 SJO (JEMx)

(C.D. Cal. filed July 2, 2010); *Loss et al. v. Skechers U.S.A., Inc. et al.*, No. 3:12-CV-78-H

(W.D. Ky. filed February 10, 2012); and *Boatright et. al. v. Skechers, U.S.A., Inc. et al.* No. 3:12-

CV-87-S (W.D. Ky. filed February 15, 2012).  Should the named plaintiffs in any action wish to

proceed individually, they must opt out as specifically provided in this order and pursuant to the terms of the Settlement Agreement.  Pursuant to 28 U.S.C. §§ 1651(a) and 2283, the Court finds, as discussed above, that issuance of this preliminary injunction is necessary and appropriate in aid of the Court's continuing jurisdiction and authority over this Action.

14. **Post-Office Box(es).**  The Class Action Settlement Administrator or their designated agent(s) shall rent one or more post-office boxes in the name of the Clerk of the Court, to be used for receiving requests for exclusion from the Class and any other communications.  Other than the Court or the Clerk of Court and the Notice Administrator, only Skechers, Skechers' Counsel, Class Counsel and their designated agents shall have access to these post-office box(es).

15. **Disclosure of Objections.**  The Class Action Settlement Administrator, Skechers' Counsel and Class Counsel shall promptly furnish to each other copies of any and all objections or written requests for exclusion that might come into their possession.

16. **Termination of Settlement.**  This Order shall become null and void and shall be without prejudice to the rights of the parties, all of whom shall be restored to their respective positions existing immediately before this Court entered this Order, if: (a) the settlement is not finally approved by the Court, or does not become final, pursuant to the terms of the Settlement Agreement; (b) the settlement is terminated in accordance with the Settlement Agreement; or (c) the settlement does not become effective as required by the terms of the Settlement Agreement for any other reason.  In such event, the settlement and Settlement Agreement shall become null and void and be of no further force and effect, and neither the Settlement Agreement nor the Court's orders, including this Order, relating to the settlement shall be used or referred to for any purpose whatsoever.

17. **Use of Order.**  This Order shall be of no force or effect if the settlement does not become final and shall not be construed or used as an admission, concession, or declaration by or against Skechers of any fault, wrongdoing, breach, or liability.  Nor shall this Order be construed or used as an admission, concession, or declaration by or against Plaintiff Grabowski or the other Class Members that their claims lack merit or that the relief requested is inappropriate, improper, or unavailable, or as a waiver by any party of any defenses or claims he, she, or it may have in this Action or in any other lawsuit.

18. **Access to Documents.**  During the pendency of this Court's consideration of the proposed Settlement Agreement, Class Members and/or their attorneys shall be allowed access, at their own expense, at a place designated by Class Counsel, to the documents disclosed through discovery in this Action to Class Counsel by Skechers, for the sole purpose of evaluating the fairness, reasonableness and adequacy of the proposed settlement, provided that such persons shall not be allowed access to these materials unless and until they enter into the Confidentiality Agreement, which is attached as an Exhibit to the Settlement Agreement.  The terms and conditions of the Confidentiality Agreement are incorporated herein by reference and, if breached, may be the basis for a finding of contempt of Court.  Only Class Members who have not excluded themselves from the Class will be allowed to review the documents produced by Skechers in the Action.

19. **Retaining Jurisdiction.**  This Court shall maintain continuing jurisdiction over these settlement proceedings to assure the effectuation thereof for the benefit of the Class.

20. **Continuance of Hearing.**  The Court reserves the right to adjourn or continue the Fairness Hearing without further written notice.

**IT IS SO ORDERED.**